ALMIRA E. PAGE *v.* HARRY A. GILBERT, RESPONDENT, AND ALMON BENNETT AND OTHERS, APPELLANTS.

*Will — gift to several persons — when they take as a class, and not as tenants in common.*

32  301
82  474

A testator, after giving all his estate to his wife for life, by the second clause of his will provided as follows: "I give, devise and bequeath to my wards Carrie E. and Harry A. Gilbert, now living with me, children of Eliza H. Gilbert, late of Delavan, Wisconsin, deceased, one undivided half of all my estate, both real and personal, of every kind and name, * * * after the decease of my beloved wife Betsey D. Bennett, to have and to hold the same to the said Carrie E.

and Harry A. Gilbert, their heirs and assigns, from and after the decease of said wife to their use and behoof forever.". By the third clause of the will he gave one-half of the residue to the children of his brothers and sisters, and the other half to the heirs of his wife's brothers and sisters, not naming such children or heirs in either case. The will contained no residuary clause. The testator's wife and Carrie E. Gilbert died before the testator. Carrie E. and Harry A. were not wards of the testator, but were taken by him into his family after the death of his own son and daughter, and continued to live there up to the time of his death.

*Held,* that the gift to Carrie E. and Harry A. was intended as a gift to them as a class, and that upon the death of his sister Harry A. took the whole thereof as survivor.

APPEAL from portions of a judgment, entered upon the order and decision of the Livingston Special Term.

This action, which was brought to secure a partition of land, involved the construction of the will of Roswell G. Bennett, deceased.

*Adelbert Moot,* for the appellants.

*F. C. Peck,* for the respondent.

SMITH, P. J. :

The will of Roswell G. Bennett, late of Nunda, deceased, after giving all his estate to his wife Betsey D. Bennett for life, contained the following clause :

"*Second.* I give, devise and bequeath to my wards Carrie E. and Harry A. Gilbert, now living with me, children of Eliza H. Gilbert, late of Delavan, Wisconsin, deceased, one undivided half of all my estate, both real and personal, of every kind and name, and all profits, income and advantage that may result therefrom, from and after the decease of my beloved wife Betsey D. Bennett, to have and to hold the same to the said Carrie E. and Harry A. Gilbert, their heirs and assigns, from and after the decease of said wife, to their use and behoof forever."

By the third clause of the will the testator divided the other half of his estate into two equal parts, one of which he directed should be divided equally between the children of his brothers and sisters, and the other between the heirs of his wife's brothers and sisters, in neither case naming such children or heirs.

His wife and Carrie E. Gilbert died before the testator. The

question is whether the share of Carrie, under the second clause of the will, lapsed (she having predeceased the testator), and so passed to the heirs-at-law of the testator, or whether it vested in the respondent, Harry A. Gilbert, as her survivor; or, in other words, whether the bequest to the respondent and his sister, in the second clause, was intended as a bequest to them as a class, or as individuals. The case of *Hoppock* v. *Tucker* (59 N. Y., 202) is claimed by the counsel on each side to be decisive in his favor. There, as here, there was a description by names, and also a description as children of the deceased relative, or, as Church, Ch. J., characterized it, "a double description, antagonistic in legal meaning." "The description by names," said he, "is a perfect bequest to them as individuals, while the other description as children of the deceased daughter, standing by itself, is a perfect bequest to them as a class." And while conceding that the clause which he had under consideration, as it was written, with its double description, free from the influence or control of other portions of the will, would, according to the adjudged cases, be construed as a personal legacy to each child, he nevertheless concluded, in view of other provisions of the will, that the bequest was to the children as a class, and so it was adjudged by the whole court.

The language in Hoppock's case differed from that we are considering in this : The gift there was to the children, "in equal proportions, share and share alike ;" but no such expression is contained in the second clause of the will in the present case. Those words are significant only as tending to show that a tenancy in common, and not a joint tenancy, was created among the devisees. But in the case of tenants in common, nothing else appearing to indicate the intention of the testator than that the gift is to them by name, and not as a class, the share of one of them dying before the testator is lapsed. (*Downing* v. *Marshall*, 23 N. Y., 366, per Comstock, Ch. J., 373.) But there are other features of this case which lead us to the conclusion that was reached at the Special Term.

1. The legal presumption arising from the fact of making a will that the testator did not intend to leave any part of his estate undisposed of, is corroborated in this case by clear evidence furnished by several provisions of the will. In repeated instances the testator used the most comprehensive language to embrace all his property

of every kind; and so confident was he that he had specifically disposed of his entire estate, that he did not think it necessary to add a residuary clause.

2. It being clearly his intention to dispose of every part of his estate by his will, the fact that he made no alteration in that instrument during his survival of Carrie E. Gilbert for more than a year is very persuasive evidence that he supposed that by the terms of the will her share would go to her brother, as survivor, and that he intended that result, for in no other way could his intention to dispose of his entire estate by the will in question take effect.

3. The fact that the beneficiaries named in the second clause of the will were taken by the testator into his family after the death of his own son and daughter (his only children), and that they, or the survivor of them, continued to live with him till his death, as shown by extrinsic evidence, and the fact that he called them his wards, although he was not their legal guardian, indicate that he intended to treat them as his children, and that as such they should take one-half of his estate with the same effect as if they had been his children in fact. In that case the share of the one dying would have vested in the survivor by inheritance.

4. It was not the intention of the testator that his brothers and sisters, who would inherit in case of his intestacy, should take anything under his will, the gift of one-fourth of the estate being to their children and not to themselves.

5. It was clearly the intention of the testator that the collateral relatives of his wife should have a share of his estate equal to that of his own collateral relatives, but that intention is inconsistent with the idea that he intended that the share of either of the beneficiaries named in the second clause dying before himself should go to his heirs-at-law.

6. If the gift in the second clause had been merely to the "children of Eliza A. Gilbert," they would have taken as a class within all the authorities; but in that case her three children would have taken, and as the testator did not intend that it was necessary to designate the two intended beneficiaries, and for that purpose they were named. The use of their names for that purpose does not, in our opinion, overcome the evidence already pointed out of the intention to treat them as a class. Describing them as "my

wards now living with me " was not an accurate and certain designation, for they were no more his wards in a legal sense than was the third child of Eliza A. Gilbert, and it was not certain whether any, or all, or which of the three children would be living with the testator at the time of his death, at which time the will would speak.

7. The will was drawn by the testator, *inops consilii;* and it is not to be supposed he was acquainted with the technical signification and effect of a gift to several persons, *nominatum.* The fact that in the third clause he did not name the children of his brothers and sisters and of the brothers and sisters of his wife, including the same Eliza A. Gilbert, may well be accounted for upon the supposition that he did not know the names of all or many of said children, in view of the evidence in the case as to their numbers, and the scattered and distant residences of several of them, and therefore he treated them all alike, and named none of them. In these circumstances it is a more reasonable and practical view of the case, to assume that the mode of designation employed by the testator in the third clause was adopted as a matter of necessity, or convenience, rather than to conclude that he intended thereby a gift so essentially different in its nature from that contained in the second clause, as is contended for by the appellants.

On the whole, we are of the opinion that in this case, as in *Hoppock* v. *Tucker*, the bequest in question was intended as a gift to the beneficiaries therein named, " as a class, and not as individuals and that the specification of their names must be subordinated to that intent." (See, also, *Ferrer* v. *Pyne*, 81 N. Y., 281, and cases there cited by DANFORTH, J.)

The judgment appealed from should be affirmed, with costs.

HARDIN and BARKER, JJ., concurred.

So ordered.